# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

HUMAN DIFFERENTIAL INTELLIGENCE
LLC,

          Plaintiff,

      v.

CVS HEALTH CORPORATION,

          Defendant.

CASE NO. 6:20-cv-00311-ADA

**PATENT CASE**

**JURY TRIAL DEMANDED**

### DEFENDANT'S MOTION TO DISMISS FOR
### <u>FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

        A.      The Complaint's Direct Infringement Allegations ................................. 3

        B.      The Complaint's Induced Infringement Allegations .............................. 4

        C.      The Complaint's Contributory Infringement Allegations....................... 4

        D.      The Text Of The Patent Claims At Issue ............................................... 5

        E.      CVS Health Corporation Is Only A Holding Company ......................... 6

III.    LEGAL STANDARDS ....................................................................................... 6

        A.      General Law Regarding Motions To Dismiss ....................................... 6

        B.      Law Regarding Motions To Dismiss Direct Infringement Claims......... 8

                1.      Law Regarding Patent Method Claims ....................................... 8

                2.      Law Regarding Joint Infringement Claims................................. 8

        C.      Law Regarding Motions To Dismiss Indirect Infringement Claims ................... 10

                1.      Law Regarding Induced Infringement Claims......................... 10

                2.      Law Regarding Contributory Infringement Claims.................. 11

IV.     ARGUMENT ...................................................................................................... 13

        A.      As A Mere Holding Company, CVS Health Corporation Is Not Liable For
                Actions Taken By Its Subsidiaries ....................................................... 13

        B.      The Complaint Does Not State A Claim For Direct Infringement ..................... 13

                1.      The Complaint Fails To Plead Facts To State A Plausible Claim
                        That CVS Performed Every Step Of A Claimed Method........................ 13

                2.      The Complaint Fails To Plead Facts To State A Plausible Claim Of
                        Joint Infringement .................................................................... 15

        C.      The Complaint Does Not State a Claim For Indirect Infringement..................... 18

                1.      The Complaint Fails To Plead Facts For Induced Infringement.............. 19

　　　　2.　　The Complaint Fails To Plead Facts For Contributory Infringement....... 19

V.　　CONCLUSION.............................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*,
   No. W:13-CV-365, 2014 U.S. Dist. LEXIS 90379 (W.D. Tex. May 12, 2014).....................11

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015).............................................................................................9

*Arris Grp., Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011)...........................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009).............................................................................7, 8

*Bass v. Stryker Corp.*,
   669 F.3d 501 (5th Cir. 2012) ................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007)..................................................................................7

*Biner Ma v. CVS Pharmacy, Inc.*,
   No. 19-cv-3367, 2020 U.S. Dist. LEXIS 16903 (N.D. Ill. Feb. 3, 2020) ................................6

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
   447 F.3d 411 (5th Cir. 2006)..............................................................................................13

*Callum v. CVS Health Corp.*,
   137 F. Supp. 3d 817 (D.S.C. 2015).......................................................................................6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017)..........................................................................................12

*Confident Techs., Inc. v. Fandango Media, LLC*,
   No. LA CV18-03035 JAK (AGRx), 2018 U.S. Dist. LEXIS 226171 (C.D.
   Cal. Aug. 20, 2018)....................................................................................................17, 19

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005)..........................................................................................12

*De La Vega v. Microsoft Corp.*,
   No. W-19-CV-00612-ADA, 2020 U.S. Dist. LEXIS 116081 (W.D. Tex. Feb.
   7, 2020) ........................................................................................................8, 9, 10

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)....................................................................................10, 11

4837-2469-5491.3

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004)...........................................................................10

*Execware, LLC v. Staples, Inc.*,
Civil Action No. 11-836-LPS-SRF, 2012 U.S. Dist. LEXIS 174885 (D. Del.
Dec. 10, 2012)..................................................................................................11, 13

*Fujitsu Ltd. v. Netgear, Inc.*,
620 F.3d 1321 (Fed. Cir. 2010)...........................................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754, 131 S. Ct. 2060 (2011)............................................................10, 11

*Inhale, Inc. v. Gravitron, LLC*,
No. 1-18-CV-762-LY, 2018 U.S. Dist. LEXIS 223241 (W.D. Tex. Dec. 10,
2018) ...................................................................................................................12

*Iron Oak Techs., LLC v. Dell, Inc.*,
No. 1:17-cv-999-RP, 2018 U.S. Dist. LEXIS 57309 (W.D. Tex. Apr. 4, 2018)..............12, 20

*LBS Innovations, LLC v. Nokia USA Inc.*,
No. 2:15-CV-1972-JRG, 2016 U.S. Dist. LEXIS 80303 (E.D. Tex. June 21,
2016) .....................................................................................................................7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)...........................................................................11

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004)...........................................................................10

*Lone Star Fund V (US), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ...............................................................................7

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016).............................................................................9

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)...........................................................................11

*Pan Eastern Exploration Co. v. Hufo Oils*,
855 F.2d 1106 (5th Cir. 1988) ............................................................................13

*R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission &
Processing Sys. Patent Litig.)*,
681 F.3d 1323 (Fed. Cir. 2012)...............................................................6, 10, 11, 12

*Raj v. La. State Univ.*,
714 F.3d 322 (5th Cir. 2013) ................................................................................7

*Rosas v. Bexar Cty.*,
    No. 5:14-CV-1082-DAE, 2015 U.S. Dist. LEXIS 55894, 2015 WL 1955406
    (W.D. Tex. Apr. 29, 2015)...................................................................................................7

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
    No. 2:15-CV-1955-JRG, 2016 U.S. Dist. LEXIS 83897 (E.D. Tex. June 28,
    2016) .............................................................................................................................8

*S. Grouts & Mortars, Inc. v. 3M Co.*,
    No. 07-61388-CIV COOKE/B, 2008 U.S. Dist. LEXIS 70222 (S.D. Fla. Sep.
    16, 2008) .......................................................................................................................6

*Sapic v. Gov't of Turkm.*,
    345 F.3d 347 (5th Cir. 2003) .......................................................................................13

*United States v. Bestfoods*,
    524 U.S. 51, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998)...............................................13

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)....................................................................................10

**Statutes**

35 U.S.C. § 271(a) ..................................................................................................................3, 4, 9

35 U.S.C. § 271(b) ...............................................................................................................4, 10, 11

35 U.S.C. § 271(c) ...............................................................................................................4, 11, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 6, 7

Fed. R. Evid. 201(b)...................................................................................................................6

## I.        INTRODUCTION

Defendant CVS Health Corporation ("Defendant" or "CVS[1]") moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Human Differential Intelligence LLC's ("Plaintiff" or "HDI") Complaint (Dkt. 1) where HDI has failed to state a claim upon which relief can be granted.  As an initial matter, HDI's Complaint is against CVS Health Corporation (a mere holding company with no operations in this District), and HDI has not pled any facts regarding any "alter ego" theory that would render CVS Health Corporation liable for the acts of any of its operating subsidiaries, such as CVS Pharmacy, Inc.  CVS further seeks dismissal with prejudice (as to any CVS entity) of HDI's claims for direct and indirect patent infringement relative to U.S. Patent Nos. 8,752,141 (the "'141 patent") (Dkt. 1-2) and 9,192,861 (the "'861 patent) (Dkt. 1-3) (collectively the "Patents-in-Suit").

HDI's direct infringement claims are defective because it has failed to plead facts regarding the performance of every step of at least one patent claim.  Any direct infringement claims premised on a joint infringement theory are further defective because HDI does not allege facts to plausibly plead the requisite "direction and control" or "joint enterprise."  In particular, HDI's Complaint does not attempt to plead "direction and control" through an agency relationship or through a contract, and fails to plead "direction and control" through a theory that CVS in some way conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance. The Complaint also does not plead a "joint enterprise" theory, as it nowhere mentions that concept, and none of the requisite elements of a joint enterprise are met.

HDI's claims for induced infringement and contributory infringement are similarly defective because the Complaint fails to allege facts concerning the elements necessary for those

---

[1] This Motion is equally applicable to CVS Pharmacy, Inc., as HDI's Complaint incorrectly names the parent and holding company, CVS Health Corporation, which has no operations. *See infra.*  HDI's patent allegations are similarly defective as to either CVS entity.

causes of action, and particularly fails to plausibly plead facts regarding any underlying direct infringement by another that is necessary for an indirect infringement claim.  HDI's Complaint also does not allege any pre-suit knowledge of the patents, so it certainly cannot support any claims for pre-filing indirect infringement.  CVS' Motion should be granted.

## II.   BACKGROUND

On April 22, 2020, HDI filed its Complaint alleging CVS' direct and indirect infringement of the '141 and '861 patents via alleged "Defendant's Acts."  Dkt. 1 at ¶¶ 14-19, 23-25, 29-31.  For example:

- Paragraph 14 of the Complaint alleges that CVS offers and/or operates the https://cvshealth.com website, and that CVS directs customers and other end-users that wish to access offerings, resources, services, electronic transactions, and/or purchases from CVS to visit https://cvshealth.com.  *Id.* at ¶ 14.

- Paragraph 15 of the Complaint alleges that CVS protects access to certain resources and/or content of the website from Internet bots through the use of Completely Automatic Public Turing Test to Tell Humans and Computers Apart ("CAPTCHA").  *Id.* at ¶ 15.  Paragraph 15 further alleges that CVS implements Google's reCAPTCHA v2 framework on the website at the URL https://cvshealth.com/news-and-insights as a precondition to customers, end-users, or third parties accessing the protected website resource or content.  *Id.*

- Paragraph 16 of the Complaint alleges that CVS creates or registers a reCAPTCHA account with Google to obtain an individualized API key, and that Defendant incorporates source code and other computerized instructions, including the individualized reCAPTCHA API key, into the architecture, design, and construction of the website.  *Id.* at ¶ 16.  Paragraph 16 further alleges that the source code directs and controls the electing, associating, presentation, processing, and calculation of information related to graphical/pictorial and/or motion-based CAPTCHA presented to a user of the website.  *Id.*  Paragraph 16 also alleges that Google enjoys various benefits from CVS' implementation of reCAPTCHA v2 in CVS' website, such as using the reCAPTCHA solutions to digitize text, annotate images, and build machine-learning datasets.  *Id.*

- Paragraph 17 of the Complaint alleges that CVS' HTML and JavaScript code and other computerized instructions perform or direct and control the performance of the following actions, among others:

  When a customer, end-user, or other third party wishes to access a protected resource or content of Defendant's website(s) and is suspected of being a robot, Defendant's website(s) displays an image-based CAPTCHA.  When Defendant first displays the

image-based CAPTCHA, 9-image tiles are shown to the website user.  Defendant instructs the user to select all tiles within the displayed tiles that contain a certain concept, for example fire hydrants, crosswalks, buses, street signs, etc.  As the user selects or clicks on an image-tile, the tile is replaced, and an additional image tile(s) is shown to the user.  Defendant further instructs the participant to click 'VERIFY' once no tiles with the specified concept remain.  At the verification stage, the user's responses are either deemed accurate (no remaining tile of the image contains the specified concept) or inaccurate (any tile of the image contains the specified concept).

*Id*. at ¶ 17.  The Complaint provides an alleged screenshot after Paragraph 17.  *Id*.

- Paragraph 18 of the Complaint alleges that CVS' HTML and JavaScript source code and other computerized instructions perform or direct and control the performance of the following actions, among others:

  When a customer, end-user, or other third party wishes to access a protected resource or content of Defendant's website(s), Defendant's website(s) automatically loads a checkbox labeled 'I'm not a robot'.  Defendant instructs and requires the user to check the box in order to access the protected record and processes, for example, the user's mouse movements and click manipulation.  If such movements and/or manipulation from the user meet a required threshold, the user is deemed human and granted access to the protected resource or content.

  *Id*. at ¶ 18.  The Complaint provides an alleged screenshot after Paragraph 18.  *Id*.

- Paragraph 19 of the Complaint alleges that the website(s) identified above are exemplary infringing products and that each of CVS' products and/or offerings that use reCAPTCHA v2 technology and/or operate in a reasonably similar manner utilize the technology claimed in the Patents-in-Suit.  *Id*. at ¶ 19.

The Complaint further has a section titled "Knowledge of Patents-in-Suit" that includes Paragraph 20 of the Complaint.  Paragraph 20 of the Complaint alleges that "Defendant had knowledge of the Patents-in-Suit and the infringing conduct as early as the date when HDI effected service of the Complaint."  *Id*. at ¶ 20.

## A.    The Complaint's Direct Infringement Allegations

The Complaint's direct infringement allegations are set forth in Paragraphs 23 and 29.

Paragraph 23 of the Complaint alleges as follows with respect to claim 1 of the '141 patent:

  On information and belief, Defendant, without authorization or license, has been and is presently directly infringing one or more claims of the '141 Patent, including at least claim 1 of the '141 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through using in the United States methods infringing one or more claims of the '141 Patent.  Defendant practices each element of at least claim 1 of the '141

Patent because it performs each step of the claimed method or performance of the step by a third party(s) is attributable to Defendant.  Defendant is thus liable for direct infringement of at least claim 1 the '141 Patent pursuant to 35 U.S.C. § 271(a).

*Id*. at ¶ 23.  Paragraph 29 of the Complaint provides similar allegations with respect to the '861 patent, and merely replaces mentions of the '141 patent with the '861 patent.  *Id*. at ¶ 29.  The asserted claim for the '861 patent is also claim 1.  *Id*.

### B.      The Complaint's Induced Infringement Allegations

The Complaint's induced infringement allegations are provided in Paragraphs 24 and 30. Paragraph 24 of the Complaint alleges as follows with respect to claim 1 of the '141 patent:

On information and belief, without authorization or license Defendant has been and is presently indirectly infringing one or more claims of the '141 Patent, including at least claim 1 of the '141 Patent, by *inter alia* actively inducing infringement of the '141 Patent under 35 U.S.C. § 271(b).  Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers, end-users, and/or other third parties to use infringing articles and methods that Defendant knows or should know infringe one or more claims of the '141 Patent. Defendant instructs its customers, end-users, and/or other third parties to use the patented inventions of the '141 Patent by directing customers, end-users, and/or other third parties to Defendant's website(s) requiring customers, end-users, and/or other third-parties to solve a reCAPTCHA v2 to access certain protected resources or content on Defendant's website in accordance with the code, service script(s), and other computerized instructions implemented by and/or for Defendant.

*Id*. at ¶ 24.  Paragraph 30 provides similar allegations with respect to the '861 patent, and merely replaces mentions of the '141 patent with the '861 patent.  *Id*. at ¶ 30.

### C.      The Complaint's Contributory Infringement Allegations

The Complaint's contributory infringement allegations are provided in Paragraphs 25 and 31.  Paragraph 25 of the Complaint alleges as follows with respect to claim 1 of the '141 patent:

On information and belief, Defendant, without authorization or license, has been and is presently indirectly infringing one or more claims of the '141 Patent, including at least claim 1, by contributing to infringement of the '141 Patent under 35 U.S.C. § 271(c) and/or § 271(f), either literally and/or under the doctrine of equivalents. Defendant had knowledge of the '141 Patent and its infringing use.  Defendant sells, offers for sale, and/or imports into the United States, a component of the infringing product or an apparatus for use in the infringing method.  That product or apparatus (a) constitutes a material part of the inventions claimed in the '141 Patent; (b) is not a

staple article or commodity of commerce suitable for non-infringing use; and (c) was especially made or adapted to infringe the '141 Patent, which Defendant knew.

*Id*. at ¶ 25.  Paragraph 31 of the Complaint provides similar allegations with respect to the '861 patent, and merely replaces mentions of the '141 patent with the '861 patent.  *Id*. at ¶ 31.

### D.    The Text Of The Patent Claims At Issue

The Complaint's allegations center on claim 1 of each of the '141 and '861 patents.  *Id*. at ¶ 23, 29.  Claim 1 of the '141 patent is as follows:

> 1.  A method of testing recognition of images for a Completely Automatic Public Turing Test To Tell Humans And Computers Apart (CAPTCHA) system comprising:
>
> a.  automatically electing an electronic image for a participant with a computing system, wherein said electronic image comprises a set of imagery data other than words, and wherein said electronic image is configured such that a subset of said set of imagery data for said electronic image can be made perceptible in a first image state;
>
> b.  associating said electronic image with one or more concepts;
>
> c.  presenting said electronic image in said first image state and progressively revealing information over a first time period within an interface for said participant using said computing system;
>
> d.  automatically processing responses from the participant with the computing system to correlate an accuracy of guesses from said participant for said one or more concepts associated with said electronic image; and
>
> e.  calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time.

Dkt. 1-2 at claim 1.

Claim 1 of the '861 patent is as follows:

> 1.  A method of providing a motion and/or orientation-based Completely Automatic Public Turing Test To Tell Humans And Computers Apart (CAPTCHA) challenge on a portable computing device comprising:
>
> a.  automatically electing a manipulation challenge for a user with the portable computing device, wherein said manipulation challenge includes a set of physical manipulation instructions for the portable computing device for the user;
>
> b.  automatically processing sensory data associated with user movements and/or

manipulations of the portable computing device; and

    c.  automatically determining if said user movements and/or manipulations from the user meet a required threshold for satisfying said set of manipulation instructions to qualify said user as a human.

Dkt. 1-3 at claim 1.

### E.    CVS Health Corporation Is Only A Holding Company

CVS Health Corporation is only a holding company.  *See, e.g., Biner Ma v. CVS Pharmacy, Inc.*, No. 19-cv-3367, 2020 U.S. Dist. LEXIS 16903, at *8, *8 n.1 (N.D. Ill. Feb. 3, 2020) (citing evidence and explaining that CVS Health Corporation "is a holding company"); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 835-37 (D.S.C. 2015) (citing evidence and concluding that CVS Health Corporation "is a holding company").  CVS Pharmacy, Inc., rather, is the entity that operates, and is wholly owned by CVS Health Corporation.  Indeed, a search using WHOIS shows that the Registrant Organization for cvshealth.com is CVS Pharmacy, Inc. *See* Ex. 1 to attached Declaration of Jeanne M. Gills.  Fed. R. Evid. 201(b) allows this Court to take judicial notice of the cited cases (and the evidence cited therein) which indisputably indicate that CVS Health Corporation is a holding company, as well as judicial notice of the WHOIS search that shows CVS Pharmacy, Inc. as the Registrant Organization for cvshealth.com.  Fed. R. Evid. 201(b) (A court may take judicial notice of facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); *S. Grouts & Mortars, Inc. v. 3M Co.*, No. 07-61388-CIV COOKE/B, 2008 U.S. Dist. LEXIS 70222, at *50 (S.D. Fla. Sep. 16, 2008) (taking judicial notice of WHOIS search).

## III.    LEGAL STANDARDS

### A.    General Law Regarding Motions To Dismiss

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if the complaint "fail[s] to state a claim upon which relief can be granted."  In a patent case, a motion to dismiss for failure to state a claim is reviewed under the law of the regional circuit.  *R+L Carriers, Inc. v. DriverTech LLC* (*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*), 681 F.3d

1323, 1331 (Fed. Cir. 2012). In the Fifth Circuit, dismissal is warranted under Rule 12(b)(6) if "'the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).

To state a claim for relief that is facially plausible, a plaintiff must plead factual content that "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007) (internal quotations omitted).

The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "The Court need not accept as true conclusory allegations and allegations contradicted by other allegations within Plaintiff's own complaint." *LBS Innovations, LLC v. Nokia USA Inc.*, No. 2:15-CV-1972-JRG, 2016 U.S. Dist. LEXIS 80303, at *6 (E.D. Tex. June 21, 2016) (citing *Rosas v. Bexar Cty.*, No. 5:14-CV-1082-DAE, 2015 U.S. Dist. LEXIS 55894, 2015 WL 1955406, at *5 (W.D. Tex. Apr. 29, 2015)).

It is significant that the December 2015 changes to the Federal Rules of Civil Procedure abrogated the Form 18 bare-bones style patent complaint, which had long been used by plaintiffs in patent cases as a safe harbor to effectively immunize minimalist pleadings of direct patent infringement from motions to dismiss. Plaintiffs in patent cases can no longer hide behind Form 18 when pleading direct infringement, but instead must now comply with the "plausibility"

standard of *Iqbal* and *Twombly*.  *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-CV-1955-JRG, 2016 U.S. Dist. LEXIS 83897, at \*7-8 (E.D. Tex. June 28, 2016).

**B.      Law Regarding Motions To Dismiss Direct Infringement Claims**

      **1.      Law Regarding Patent Method Claims**

All claims of the Patents-in-Suit are method claims.  In a patent case involving method claims, a plaintiff fails to state a claim to relief that is plausible on its face when the complaint fails to provide allegations to support an inference that all steps of at least one patent claim have been performed.  *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 U.S. Dist. LEXIS 116081, at \*15-17 (W.D. Tex. Feb. 7, 2020).  In *De La Vega*, the patent included a method claim including steps of "providing," "coupling," "presenting," and "selecting."  *Id*. at \*3.  There, the Court agreed with the defendant's argument that the complaint was devoid of allegations that would support an inference that the defendant (or anyone) performed the "coupling" step.  *Id*. at \*15-16.  The Court explained that the complaint provided a short description for each limitation in the method claim, all except for the "coupling" limitation.  *Id*. at \*16.

The Court in *De La Vega* pointed out that while the complaint provided descriptions for the "providing," "presenting," and "selecting" steps, the plaintiff did not provide any written description of how the Accused Instrumentalities performed the "coupling" step.  *Id*.  The Court further explained that while the plaintiff presented three screenshots as evidence, the plaintiff failed to explain how that evidence showed that defendant and/or a third party performed the "coupling" step.  *Id*.  Because the plaintiff did not include even a short written description of how the accused instrumentalities met the "coupling" step, the Court found that the complaint failed to state a claim upon which relief could be granted.  *Id*. at \*16-17.

      **2.      Law Regarding Joint Infringement Claims**

Joint infringement is a limited exception to the rule that direct infringement of a method claim requires one entity to perform all its steps.  Under this exception, direct infringement can occur when multiple actors perform the required method, but only if an alleged infringer either

directs or controls the other actor's performance or forms a joint enterprise with the other actor. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). "Accordingly, to meet the *Twombly/Iqbal* pleading standard for joint infringement by the combined acts of multiple parties, the complaint must plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *De La Vega*, 2020 U.S. Dist. LEXIS 116081, at \*9 (quoting *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016)).

Regarding "direction and control," courts consider general principles of vicarious liability to determine if a single entity directs or controls the acts of another. *Akamai*, 797 F.3d at 1022. To determine whether a single actor directed or controlled the acts of third parties, the Federal Circuit has held that: (1) "an actor is liable for infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method," and (2) "liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id*. at 1023.  Regarding a "joint enterprise," the existence of a joint enterprise for purposes of divided infringement requires proof of four elements: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id*. at 1023.

Even if a complaint "does not explicitly indicate whether [the defendant] infringes the asserted patents under a single or joint theory of direct infringement," it must be analyzed under joint infringement pleading standards if its allegations "implicate joint infringement." *Lyda*, 838 F.3d at 1339.

### C.        Law Regarding Motions To Dismiss Indirect Infringement Claims

"Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).   "'[T]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" *Bill of Lading*, 681 F.3d at 1333 (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)).   To survive a motion to dismiss, a claim for indirect infringement must contain facts supporting an underlying direct infringement.   *De La Vega*, 2020 U.S. Dist. LEXIS 116081, at *18-19 (stating that to support a claim for indirect infringement, a plaintiff must plead facts sufficient to allow an inference that at least one direct infringer exists).

### 1.        Law Regarding Induced Infringement Claims

Induced infringement refers to acts under section 271(b), which states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). The Supreme Court has explained that induced infringement under section 271(b) requires knowledge of the existence of the patent that is infringed. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765, 131 S. Ct. 2060, 2068 (2011).   To establish liability under section 271(b), a patent holder must also prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement.   *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006).   Mere knowledge of the acts alleged to constitute infringement is not enough for inducing infringement, because "'specific intent and action to induce infringement must be proven.'"   *Id.* (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003)).   Inducement requires evidence of culpable conduct directed to encouraging another's infringement.   *Id.* at 1306.

Thus, to plead a claim for induced infringement, a plaintiff must allege facts sufficient to show: (1) knowledge of the existence of the patent; (2) direct infringement by another; (3) specific intent to induce the infringement; and (4) culpable conduct directed to encouraging

the infringement.  *See* 35 U.S.C. § 271(b); *Global-Tech*, 563 U.S. at 765-66; DSU, 471 F.3d at 1305.  "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (alterations in original) (quoting *Bill of Lading*, 681 F.3d at 1339); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018).

Regarding knowledge of the patent, if a plaintiff seeks liability and damages from a party for *pre-filing* induced infringement, the plaintiff must plead facts to show that the party had *pre-suit* knowledge of the patent, or else those causes of action must be dismissed.  *Execware, LLC v. Staples, Inc.*, Civil Action No. 11-836-LPS-SRF, 2012 U.S. Dist. LEXIS 174885, at *15 (D. Del. Dec. 10, 2012).  Indeed, as explained in *Execware*, "pre-suit knowledge of the patent must be alleged unless the plaintiff limits its cause of action for indirect infringement to post-litigation conduct."  *Id*.; *see also Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*, No. W:13-CV-365, 2014 U.S. Dist. LEXIS 90379, at *17-18 (W.D. Tex. May 12, 2014) ("[b]ecause Plaintiff's complaint failed to specifically allege the basis of [defendant's] knowledge with respect to the induced infringement claim, and the complaint lacks sufficient allegations of willful blindness, Plaintiff failed to allege facts that [defendant's] awareness of the Asserted Patents was plausible … [a]s such, dismissal of the induced infringement claims is proper.").

## 2.    Law Regarding Contributory Infringement Claims

Contributory infringement refers to acts under section 271(c), which states that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  35 U.S.C. § 271(c).

-11-

Section 271(c) has different requirements for infringement of a "machine" claim than for infringement of a "process" claim. Contributory infringement of a "machine" claim requires offering to sell or selling within the United States or importing into the United States a component of the patented machine. *Id*. Contributory infringement of a "process" or method claim requires offering to sell or selling within the United States or importing into the United States a material or apparatus for use in practicing the patented process. *Id*. In the present case, all claims of the Patents-in-Suit are method claims.

Thus, to plead a claim for contributory infringement of a method claim, a patent holder must allege facts sufficient to show: (1) knowledge of the existence of the patent; (2) direct infringement by another; (3) there has been an offer to sell or sale within the United States or importation into the United States of a material or apparatus for use in practicing a patented process; (4) the material or apparatus constitutes a material part of the invention; (5) knowledge that the material or apparatus is especially made or especially adapted for use in an infringement of the patent; and (6) the material or apparatus is not a staple article or commodity of commerce suitable for substantial non-infringing use. *See* 35 U.S.C. § 271(c); *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011); *Bill of Lading*, 681 F.3d at 1337; *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

In order to survive a motion to dismiss, a claim for contributory infringement must identify the sale or importation of a material or apparatus that is used to infringe. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363-64 (Fed. Cir. 2017) (affirming dismissal of contributory infringement claims without leave to amend where no "material or apparatus" was sold or offered to be sold); *Iron Oak Techs., LLC v. Dell, Inc.*, No. 1:17-cv-999-RP, 2018 U.S. Dist. LEXIS 57309, at *5-6 (W.D. Tex. Apr. 4, 2018) (dismissing claims that did "not identify the component, material, or apparatus that allegedly contributes to the direct infringement of either patent"); *Inhale, Inc. v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 U.S. Dist. LEXIS 223241, at *6-7 (W.D. Tex. Dec. 10, 2018) (dismissing contributory

infringement claim for merely stating a conclusion and lacking factual content).  Moreover, pre-suit knowledge of the patent must be alleged unless the plaintiff limits its cause of action for indirect infringement to post-litigation conduct.  *Execware*, 2012 U.S. Dist. LEXIS 174885, at *15.  As a consequence, a complaint for *pre-filing* contributory infringement must be dismissed if there is no allegation of *pre-suit* knowledge of the patent.  *Id.*

## IV.   ARGUMENT

### A.   As A Mere Holding Company, CVS Health Corporation Is Not Liable For Actions Taken By Its Subsidiaries

CVS Health Corporation is merely a holding company and has no operations.  CVS Pharmacy, Inc., rather, is the entity that operates, and is wholly owned by CVS Health Corporation.  "A bedrock principle of corporate law is that 'a parent corporation … is not liable' for actions taken by its subsidiaries."  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 416 (5th Cir. 2006) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 1884, 141 L. Ed. 2d 43 (1998)).  In only "exceptional" cases, "courts will apply the alter ego doctrine and hold a parent liable for the actions of its instrumentality in the name of equity when the corporate form is used as a 'sham to perpetrate a fraud.'"  *Id.* (quoting *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1132 (5th Cir. 1988)).  The alter ego doctrine "applies only if '(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'"  *Id.* (quoting *Sapic v. Gov't of Turkm.*, 345 F.3d 347, 359 (5th Cir. 2003)).  HDI has not plead any facts regarding "alter ego" and, thus, CVS Health Corporation should be dismissed on that basis alone.  The further arguments in this Motion regarding the failure to plausibly plead any claim of infringement apply equally for CVS Pharmacy, Inc.

### B.   The Complaint Does Not State A Claim For Direct Infringement

#### 1.   The Complaint Fails To Plead Facts To State A Plausible Claim That CVS Performed Every Step Of A Claimed Method

-13-

As discussed *supra*, in a patent case involving method claims, a plaintiff fails to state a claim to relief that is plausible on its face when the complaint fails to provide allegations to support an inference that all steps of at least one patent claim have been performed.   The Complaint in the present case identifies claim 1 from each of the '141 and '861 patents as being allegedly infringed.  Dkt. 1 at ¶ 23, 29.  The Complaint, however, fails to allege facts to support the performance of all steps of each of those claims.

For example, claim 1 of the '141 patent recites, among other steps, "e.  calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time."   Dkt. 1-2 at claim 1.   The Complaint does not provide any facts to support the performance by anyone of that "calculating a percentage" step.   The alleged screenshots provided in the Complaint do not show the calculation of any percentage.  Paragraph 16 of the Complaint is the only paragraph that mentions the word "calculation," but it merely alleges that there is "calculation of information" and does not allege that there is any calculation of "a percentage of participants."  Dkt. 1 at ¶ 16.  The word "percentage" is never mentioned in the Complaint.  There are simply no facts plead in the Complaint regarding the claimed step of "e.  calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time."  As such, the allegation of infringement is not plausible in view of the pleadings.

As an example for claim 1 of the '861 patent, the claim recites among other steps, "c. automatically determining if said user movements and/or manipulations from the user meet a required threshold for satisfying said set of manipulation instructions to qualify said user as a human."  Dkt. 1-3 at claim 1.  In Paragraph 18 of the Complaint, HDI points to a checkbox labeled "I'm not a robot" and asserts that CVS instructs a user to check the box and processes the user's mouse movements and click manipulation.  Dkt. 1 at ¶ 18.  Paragraph 18 of the Complaint further alleges that "[i]f such movements and/or manipulation from the user meet a required threshold, the user is deemed human and granted access to the protected resource or content." *Id*.  That allegation made by HDI is a conclusory allegation that the Court need not accept as

true, because HDI does not plead any facts to demonstrate that there is any determination as to whether a human has clicked the "I'm not a robot" box based on movements and/or manipulations meeting a required threshold.  Indeed, HDI does not allege any facts to show the existence of any threshold for movements and/or manipulations.  As such, the allegation of infringement is not plausible in view of the pleadings.

HDI's direct infringement allegations in Paragraphs 23 and 29 of the Complaint merely assert that "Defendant practices each element of at least claim 1" of each of the Patents-in-Suit without discussing any of the steps of those claims or how the previous allegations in the Complaint would relate to the steps of those claims.  *Id*. at 23, 29.  The allegations in those paragraphs, therefore, are merely conclusory statements that the Court need not and should not accept as true for purposes of deciding this motion to dismiss.

### 2. The Complaint Fails To Plead Facts To State A Plausible Claim Of Joint Infringement

The direct infringement allegations in Paragraphs 23 and 29 of the Complaint do not explicitly allege "joint infringement," but merely state that CVS "performs each step of the claimed method or performance of the step by a third party(s) is attributable to Defendant." *Id*. To the extent that the recitation of "performance of the step by a third party(s) is attributable to Defendant" in the allegations is viewed as a joint infringement theory, the Complaint fails to meet the *Twombly*/*Iqbal* pleading standard for joint infringement.  As discussed above, the Complaint fails to plead facts sufficient to allow a reasonable inference that all steps of the claimed methods are even performed by anyone.  The Complaint further fails to plead facts sufficient to allow a reasonable inference that either: (1) one party exercises the requisite "direction and control" over the other's performance; or (2) the actors form a "joint enterprise" such that performance of every step is attributable to the controlling party.

The Complaint does not attempt to plead "direction and control" through an agency relationship or through a contract, as the Complaint nowhere mentions those concepts.  There are no facts plead to establish any agency relationship, and there are no facts plead to establish any

-15-

contract.

The Complaint also fails to plead "direction and control" through a theory that CVS in some way conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance. For example, claim 1 of the '141 patent requires a step of "e. calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time." Dkt. 1-2 at claim 1. The Complaint does not even allege that anyone performs this step and, thus, the Complaint certainly does not allege that CVS conditions participation in an activity with Google or the receipt of a benefit by Google upon performance of such a step, and does not allege that CVS establishes the manner or timing of the performance of such a step.

An action of calculating a percentage of participants able to decode and accurately guess one or more concepts within a predetermined time is not necessary for performing reCAPTCHA, so there would be no reason for CVS to condition participation in any activity or receipt of any benefit on performance of such an action or to establish the manner or timing of performance of such an action. Nor does the Complaint allege that CVS requires or even requests that Google calculate a percentage of participants able to decode and accurately guess one or more concepts within a predetermined time, or that CVS would even care about such a percentage calculation.

The Complaint alleges in Paragraph 16 that Google enjoys various benefits from CVS' implementation of reCAPTCHA v2 in CVS' website, such as using the reCAPTCHA solutions to digitize text, annotate images, and build machine-learning datasets. Those allegations, however, are divorced from the steps recited in the claim. The Complaint does not allege that in order to implement reCAPTCHA v2 that it is necessary to perform the step of "calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time." CVS does not condition Google's receipt of any of the alleged benefits on performing that step of the claim, nor does the Complaint make such an allegation.

Similarly, with respect to claim 1 of the '861 patent, the claim requires "automatically determining if said user movements and/or manipulations from the user meet a required

-16-

threshold for satisfying said set of manipulation instructions to qualify said user as a human." Dkt 1-3 at claim 1.  As discussed above, HDI makes conclusory allegations that movements and/or manipulations are recorded and processed in the clicking of an "I'm not a robot" box and then checked against a threshold.  Dkt. 1 at ¶ 18.  As also discussed above, the Complaint provides no facts regarding recording or processing movements and/or manipulations in the clicking of an "I'm not a robot" box or the use of any threshold, but even if such functions were performed, they are not necessary to implement reCAPTCHA.  CVS does not condition Google's receipt of any of the alleged benefits on performing that step of the claim, nor does the Complaint make such an allegation.  The Complaint does not allege that CVS would even know if Google were performing such a step, so there would be no reason for CVS to condition anything on the performance of such a step.

The Complaint also does not plead a "joint enterprise" theory, as it nowhere mentions that concept.  None of the four requisite elements of a joint enterprise are met.  HDI has not alleged facts showing that Google is contractually obligated to provide any functionality to CVS.  Moreover, HDI has not alleged that Google has any common purpose with CVS.  HDI has not alleged a common pecuniary benefit for Google and CVS.  HDI has not alleged that Google and CVS have an equal right to a voice in the direction of any enterprise.  Any claims for joint infringement in the Complaint, therefore, are deficient.

Just as a sister court dismissed similar joint infringement allegations based on Google's CAPTCHA technology, so should this Court.  *Confident Techs., Inc. v. Fandango Media, LLC*, No. LA CV18-03035 JAK (AGRx), 2018 U.S. Dist. LEXIS 226171, at *1 (C.D. Cal. Aug. 20, 2018).  There, the plaintiff in *Confident Technologies* asserted method patent claims directed to CAPTCHA technology.  *Id*. at *2-3.  The plaintiff accused a website operator (Fandango) of infringing the claims by using Google's reCAPTCHA service.  *Id*. at *4-5.  The *Confident Technologies* court dismissed the complaint because it did not "explain how Plaintiff establishes the timing and performance" of allegedly infringing claim steps performed by Google.  *Id*. at *9-11.  The same rationale applies here warranting dismissal of HDI's claims.

-17-

**C.      The Complaint Does Not State a Claim For Indirect Infringement**

For indirect infringement allegations, both induced infringement and contributory infringement require as their first two factors: (1) knowledge of the existence of the patent; and (2) direct infringement by another.  The Complaint is deficient with respect to both factors.

The Complaint does not properly plead the knowledge of the patent element required for indirect infringement.  HDI alleges that CVS "has been and is presently indirectly infringing" the Patents-in-Suit.  Dkt. 1 at ¶¶ 24-25, 30-31.  By merely stating that CVS "has been" indirectly infringing the patents, HDI is apparently seeking to cover indirect infringement both in the pre-litigation context and in the post-filing context.  As discussed *supra*, claims for pre-filing indirect infringement must be dismissed if there is no allegation of pre-suit knowledge of the patents.  HDI only alleges that "Defendant had knowledge of the Patents-in-Suit and the infringing conduct as early as the date when HDI effected service of the Complaint" and does not allege any pre-suit knowledge of the patents.  *Id*. at ¶ 20.  Consequently, because the claims for indirect infringement (both induced and contributory) are not limited in the pleadings to post-litigation conduct, they must be dismissed.

The Complaint also fails to plead any underlying direct infringement necessary for an indirect infringement allegation.  HDI alleges that "customers, end-users, and/or other third parties" are the direct infringers for the induced infringement allegations, *id*. at ¶¶ 24, 30, and does not identify any direct infringer for the contributory infringement allegations, *id*. at ¶¶ 25, 31.  The Complaint does not contain plausible allegations that customers or end-users infringe because their conduct is barely described, and nowhere correlated with the asserted claim requirements.  Indeed, the claims on their face are not directed at customers or end-users, as they require back-end procedures.  For example, claim 1 of the '141 patent recites "automatically electing an electronic image for a participant" and "calculating a percentage of participants," Dkt. 1-2, and claim 1 of the '861 patent recites "automatically electing a manipulation challenge for a user" and "automatically processing sensory data associated with user movements," Dkt. 1-3.  There are no allegations that customers or end-users perform such steps.

-18-

A similar situation arose in the *Confident Technologies* case, where the court stated that the complaint failed to adequately allege induced infringement because the complaint did not provide a plausible explanation for how a customer who must complete a reCAPTCHA to proceed to a particular website, could also be the direct infringer performing each and every limitation of the asserted claims that required back-end processes. *Confident Techs.*, 2018 U.S. Dist. LEXIS 226171, at *12. The induced and contributory infringement allegations should thus be dismissed for failure to plead any underlying direct infringement.

### 1. The Complaint Fails To Plead Facts For Induced Infringement

In addition to failing to properly plead knowledge of the existence of the patent and underlying direct infringement by another, the Complaint also fails to plead any facts regarding the other factors of induced infringement. The Complaint does not allege facts regarding any specific intent to induce infringement, or regarding any culpable conduct directed to encouraging infringement. The Complaint alleges that CVS instructs customers or end-users to solve a reCAPTCHA (Dkt. 1 at ¶¶ 24, 30), yet such allegation is divorced from the claim language.

For example, claim 1 of the '141 patent requires a step of "e. calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time." Dkt. 1-2 at claim 1. HDI does not allege that CVS instructs customers or end-users to perform such a step. Consequently, there are no facts in the Complaint to show that CVS had any culpable conduct directed to encouraging such a step. Similarly, claim 1 of the '861 patent, requires a step of "automatically determining if said user movements and/or manipulations from the user meet a required threshold for satisfying said set of manipulation instructions to qualify said user as a human." Dkt 1-3 at claim 1. Again, HDI does not allege that CVS instructs customers or end-users to perform such a step. The induced infringement claims in the Complaint should be dismissed.

### 2. The Complaint Fails To Plead Facts For Contributory Infringement

In addition to failing to properly plead knowledge of the existence of the patent and underlying direct infringement by another, the Complaint also fails to plead any facts regarding

-19-

the other factors of contributory infringement.  As discussed *supra*, contributory infringement requires that there has been an offer to sell or sale within the United States or importation into the United States of a material or apparatus for use in practicing a patented process.  The Complaint merely states in a conclusory fashion with no supporting facts that "Defendant sells, offers for sale, and/or imports into the United States, a component of the infringing product or an apparatus for use in the infringing method."  Dkt. 1 at ¶¶ 25, 31.  Such conclusory allegations should not be regarded as true for purposes of this Motion.  The Complaint does not identify what it would consider to be the "material or apparatus," and thus certainly does not plead any facts regarding any offer to sell or sale within the United States or importation into the United States of such a material or apparatus.

Moreover, the Complaint merely states in conclusory fashion that "[t]hat product or apparatus (a) constitutes a material part of the inventions claimed in the … Patent; (b) is not a staple article or commodity of commerce suitable for non-infringing use; and (c) was especially made or adapted to infringe the … Patent, which Defendant knew." *Id*.  The Complaint does not provide any facts for any of those factors of contributory infringement.  Merely stating legal factors without any facts is not proper pleading.  *See, e.g., Iron Oak*, 2018 U.S. Dist. LEXIS 57309, at *5-6 (dismissing contributory infringement claim in part because the conclusory allegation that the components provided by defendant were not staple articles of commerce suitable for substantial non-fringing use was no more than a "threadbare recital" of one of the elements of a contributory infringement claim, which did not state a plausible claim for relief).  The contributory infringement claims, therefore, should be dismissed.

## V.    CONCLUSION

For each and all of the foregoing reasons, CVS respectfully requests that this Motion be granted and HDI's Complaint against CVS be dismissed.

4837-2469-5491.3

## REQUEST FOR ORAL HEARING

Pursuant to L.R. CV-7, CVS requests an oral hearing for this motion.

Dated: July 20, 2020                    Respectfully submitted,

                                        ___/s/   Jeanne M. Gills_____
                                        Sara Ann Brown
                                        Texas State Bar No. 24075773
                                        **Foley & Lardner LLP**
                                        2021 McKinney Ave., Suite 1600
                                        Dallas, Texas 75201
                                        (214) 999-3000 (telephone)
                                        (214) 999-4667 (facsimile)
                                        sabrown@foley.com

                                        Jeanne M. Gills (*admitted pro hac vice*)
                                        **Foley & Lardner LLP**
                                        321 North Clark Street, Suite 3000
                                        Chicago, IL 60654
                                        (312) 832-4500 (telephone)
                                        (312) 832-4700 (facsimile)
                                        jmgills@foley.com

                                        Justin M. Sobaje (*admitted pro hac vice*)
                                        **Foley & Lardner LLP**
                                        555 South Flower Street, Suite 3300
                                        Los Angeles, CA 90071
                                        (213) 972-4500 (telephone)
                                        (213) 486-0065 (facsimile)
                                        jsobaje@foley.com

                                        ***Counsel for Defendant,***
                                        ***CVS Health Corporation***

4837-2469-5491.3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 20, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

 /s/ Jeanne M. Gills
Jeanne M. Gills

-22-